# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person, property, or object to be tracked )*<br><br>A black Chevrolet Impala, bearing Wisconsin registration plates of AUC-9843, Vehicle Identification Number 1G1125S34JU142888 | )<br>)<br>)  Case No. 25-838M(NJ)<br>)<br>)<br>) |

## TRACKING WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and  ☑ is located in this district;   ☐ is not now located in this district, but will be at execution;  ☐ the activity in this district relates to domestic or international terrorism;   ☐ other: _____.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object    ☑ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: A black Chevrolet Impala, bearing Wisconsin registration plates of AUC-9843, Vehicle Identification Number 1G1125S34JU142888; 719 W. Madison Street, Milwaukee, WI

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by  3/9/2025   *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until 4/14/2025   *(no later than 45 days from the date this warrant was issued)*.  The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☑ into the vehicle described above       ☑ onto the private property described above
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* _____ and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510).  I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of   08/25/2025  .

Date and time issued: 2/27/2025 @ 3:50 p.m.

*Judge's signature*

City and state:   Milwaukee, Wisconsin           Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

Case No.

## Return of Tracking Warrant With Installation

1. Date and time tracking device installed: _____

2. Dates and times tracking device maintained: _____

3. Date and time tracking device removed: _____

4. The tracking device was used from *(date and time)*: _____

   to *(date and time)*: _____ .

## Return of Tracking Warrant Without Installation

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

   to *(date and time)*: _____ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of *(Identify the person to be tracked or describe the object or property to be used for tracking)* A black Chevrolet Impala, bearing Wisconsin registration plates of AUC-9843, Vehicle Identification Number 1G1125S34JU142888 | Case No. 25-838M(NJ) |

**APPLICATION FOR A TRACKING WARRANT**

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. § __841(a)(1)&846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☑ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
A black Chevrolet Impala, bearing Wisconsin registration plates of AUC-9843, Vehicle Identification Number 1G1125S34JU142888; 719 W. Madison Street, Milwaukee, WI

☑ Delayed notice of __180__ days (give exact ending date if more than 30 days: __08/25/2025__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature:* Robert Gregory

Robert Gregory, DEA TFO
*Applicant's printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 2/27/2025

*Judge's signature*

City and state: Milwaukee, Wisconsin

Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Robert Gregory, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the locations of a vehicle more particularly described as **black Chevrolet Impala, bearing Wisconsin registration plates of AUC-9843, Vehicle Identification Number 1G1125S34JU142888** (hereinafter "**Subject Vehicle**").

2. I am a federally deputized Task Force Officer (TFO) with the Drug Enforcement Administration (DEA). I am currently assigned to the High Intensity Drug Trafficking Area (HIDTA). I am also currently a Milwaukee Police Officer and have been for over ten years.

3. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. As part of my duties as a DEA TFO, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c). In the course of my experience, I

have and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, including cellular telephones and other electronic telecommunication devices.

5. During my law enforcement career, I have participated in numerous narcotics investigations and have authored numerous affidavits supporting criminal complaints and search and seizure warrants. I have debriefed multiple defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. Based on my training, experience, and conversations with other law enforcement officers (LEOs), I am familiar with the ways in which drug traffickers conduct their unlawful drug trafficking activity, including, but not limited to, their methods used to distribute, transport, store, manufacture, and import controlled substances, their use of code words and numbers to conduct their transactions, their methods for concealing and safeguarding narcotics and narcotics proceeds, their methods used to launder narcotics proceeds, their use of violence and threats of violence to protect their organization, and the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. For example, I am familiar with their use of telephones, counter-surveillance, false and/or fictitious identities, and the use of coded language during conversations when referring to narcotics to disguise the true meaning of the conversation.

6. I have also gained experience and insight into the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the means by which those individuals commit those offenses, and the tools available to law enforcement to further such investigations. Based on this experience, I am aware that automobiles are commonly used by individuals involved in drug trafficking, both to transport and distribute those substances and to conceal them.

7. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed, are being committed, and/or will be committed by Javier CARTAGENA-COLON (DOB XX/XX/1987). There is also probable cause to believe that the locations of the **Subject Vehicle** will constitute evidence of those criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

3

**PROBABLE CAUSE**

*Case Summary*

9. Case agents are currently investigating Miguel CARTAGENA-MIRANDA (DOB: XX/XX/1990) and Maleny DEL VALLE-ROSA (DOB: XX./XX/1992), who are shipping large amounts of cocaine into the Eastern District of Wisconsin from Puerto Rico to Jeronis MONTERO (DOB: XX/XX/1997) and Javier CARTAGENA-COLON (DOB:XX/XX/1987). Case agents believe that this Drug Trafficking Organization (DTO) has used and continues to use fictious names to send parcels through the United States Postal Service to Milwaukee, Wisconsin. During the course of the investigation, case agents have seized and searched two of the suspected DTO-associated parcels pursuant to search warrants. Each parcel was found to contain approximately one kilogram of cocaine.

10. The investigation began in 2022, at which time, case agents began investigating Ricardo MORENO-CRUZ ("MORENO-CRUZ") (DOB: XX/XX/1985) for receiving large amounts of cocaine laden USPS parcels shipped to him from CARTAGENA-MIRANDA. On May 22, 2023, MORENO-CRUZ was arrested after a controlled delivery and a search warrant was executed at his residence. In a post-*Miranda* interview with MORENO-CRUZ, he advised he had multiple cocaine suppliers in Puerto Rico, and one source of supply for him had been CARTAGENA-MIRANDA. According to MORENO-CRUZ, CARTAGENA-MIRANDA would ship one to two kilograms of cocaine in USPS parcels to MORENO-CRUZ for more than a year. MORENO-CRUZ

would pay CARTAGENA-MIRANDA approximately $20,000 per kilogram. MORENO-CRUZ provided consent to case agents to search and download the contents of the cell phones in his possession when he was taken into custody. After a review of the phone's content, case agents located a conversation between MORENO-CRUZ and "Sugar White" through Facebook messenger. A review of the "Sugar White" Facebook profile showed the profile picture was of CARTAGENA-MIRANDA. The Facebook messenger conversation between CARTAGENA-MIRANDA and MORENO-CRUZ was from March 2023 to May 2023. Both subjects appeared to be discussing the price of a kilogram of cocaine ranging from $18,000 to $19,500.

11. MORENO-CRUZ was later criminally charged for his participation in this drug trafficking organization. On January 9, 2024, MORENO-CRUZ pled guilty to two counts of possession with intent-cocaine and possession of a firearm by a convicted felon. *See State of Wisconsin v. Richard Moreno*, Milwaukee County Court Case 2023CF002604.

12. Postal Inspectors for the United States Postal Inspection Service (USPIS) review Postal Service records and labels of parcels delivered to the state of Wisconsin from source narcotics areas or sent to those source narcotics areas from Wisconsin. Case agents know that, based on training and experience, drug traffickers will sometimes use USPS Priority Mail service, which is the intended USPS two-day delivery product. Based on my training and experience, I know drug traffickers use Priority Mail delivery service because of its reliability and the ability to track the article's progress to the intended delivery point. In my training and experience, traffickers will often use fictitious names,

5

phone numbers, and/or addresses as well as incomplete names and addresses in an attempt to hide their trafficking efforts from law enforcement.

13. I know, based on my training and experience, Puerto Rico is a trans-shipment point for controlled substances. As such, controlled substances are frequently transported from Puerto Rico via USPS, and the proceeds from the sale of the controlled substances are frequently returned to Puerto Rico via USPS and/or other means.

14. As of February 2025, case agents have located approximately 30 suspicious parcels that were sent from Puerto Rico to the Milwaukee, Wisconsin area, and that are suspected to be associated with this DTO. It appears that CARTAGENA-MIRANDA, who is believed to be located in Puerto Rico, is orchestrating the shipment of cocaine to Milwaukee, Wisconsin. Through the course of the investigation, case agents have received copies of the Post Office surveillance video for many of the parcels shipped from Puerto Rico, which videos depict CARTAGENA-MIRANDA and DEL VALLE-ROSA, also believed to reside in Puerto Rico, shipping many of the various suspected cocaine-laden parcels.

*IP Address Subscribed to Julio VARGAS Tracked SUBJECT PARCEL 22*

15. On September 21, 2023, case agents were made aware of USPS Priority Mail parcel 9505510336373263233430 ("SUBJECT PARCEL 22"). SUBJECT PARCEL 22 was a USPS large flat rate parcel weighing approximately 8 lbs. 11 oz. The shipping label for SUBJECT PARCEL 22 indicated it was from "Carla Jimenez Lopez Urb. Reparto Santa Teresita M 15 Calle 25 Bayamon PR 00956". SUBJECT PARCEL 22 bore a handwritten

6

label addressed to "Angel Threatt Gonzalez 2441 N Dr William Finlayson St Milwaukee WI 53212". SUBJECT PARCEL 22 was postmarked on September 20, 2023, in Sabana Seca, Puerto Rico 00952 at approximately 10:28 AM. The postage paid was $22.80.

16. On September 26, 2023, case agents applied for a federal search warrant for SUBJECT PARCEL 22. On September 27, 2023, the search warrant was issued by United States Magistrate Judge Stephen Dries in the Eastern District of Wisconsin. Upon executing the search warrant on SUBJECT PARCEL 22, case agents discovered one vacuum sealed bag of a white powdery substance, suspected to be cocaine, wrapped in multiple layers of vacuum sealed bags, plastic wrap, and carbon paper. Three additional smaller plastic bags containing unknown powders were located within these wrappings. The brick of suspected cocaine had a gross weight of approximately 1,028 grams. The suspected cocaine field tested positive for cocaine HCl. The unknown powders were also tested, but they came back as inconclusive.

17. The drug packaging, suspected cocaine, and the additional three unknown powders were later sent to the USPIS Forensic Laboratory for analysis. Certified laboratory testing revealed the presence of the following controlled substances:

    a. Approximately 1,010.8 grams of cocaine hydrochloride and caffeine;

    b. Approximately 0.4562 grams of heroin, fluorofentanyl, fentanyl, and procaine;

    c. Approximately 0.9856 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine; and

    d. Approximately 1.2323 grams of fentanyl, cocaine, 4-anilino-N-phenethylpiperidine (4-ANPP), xylazine, and caffeine.

7

18.     A latent print examination of SUBJECT PARCEL 22 and its contents found CARTAGENA-MIRANDA's prints were located on multiple locations including the items within the parcel, the adhesive side of clear tape, and pieces of green plastic wrap.

19.     A review of the USPS business records indicated an unknown person(s) was using a specific and unique method to track SUBJECT PARCEL 22. A subpoena return from AT&T indicated the Internet Protocols ("IP") used to track the parcel was subscribed to Julio VARGAS ("VARGAS"), 3908 N. 19th Place, Unit 1 Unit 1, Milwaukee, Wisconsin 53206, (262)900-5023. VARGAS was on probation for a previous felony drug case through the state of Wisconsin. On October 19, 2023, case agents were notified by the Milwaukee Police Department that VARGAS was murdered on this date. Phone records for VARGAS's phone number provided by AT&T above showed his phone had multiple phone contacts with 939-324-5219. The subscriber information for 939-324-5219 was listed as CARTAGENA-MIRANDA. All of the phone contacts were made on August 24, 2023.

20.     On October 2, 2023, case agents received a copy of the Post Office surveillance video, which depicted DEL VALLE-ROSA shipping SUBJECT PARCEL 22.

*SUBJECT PARCEL 29*

21.     On or about January 30, 2025, case agents reviewed US Postal Service (USPS) business records when the following parcels were found to be suspicious: USPS Priority Mail parcel 9505510690125027094604 ("SUBJECT PARCEL 29"). SUBJECT PARCEL 29 was a USPS large flat rate parcel weighing approximately 8 lbs. 7 oz. The

8

shipping label for SUBJECT PARCEL 29 indicated it was from "Josue Rivera Calle Perla del Sur I28 Reparto Flamingo Bayamon PR 00959". SUBJECT PARCEL 29 bore a handwritten label addressed to "Carlos Garcia 1032 West Rogers St. Milwaukee WI 53204". SUBJECT PARCEL 29 was postmarked on January 27, 2025, in Bayamon, Puerto Rico 00957, at approximately 11:52 a.m. The postage paid was $26.30.

22. A search of Law Enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

23. On January 30, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 29. At approximately 9:22 a.m., the **Subject Vehicle** parked in front of 1032 West Rogers Street. The Wisconsin Department of Transportation ("DOT") records showed the **Subject Vehicle** was registered to April Maria Puentes at 719 West Madison Street Upper, Milwaukee, Wisconsin. At approximately 9:52 a.m., the **Subject Vehicle** left the area and drove westbound on West Rogers Street. At approximately 10:22 a.m., the **Subject Vehicle** parked returned and parked in front of 1032 West Rogers Street, in the same spot it was previously parked. At approximately 10:42 a.m., the USPS Letter Carrier arrived to the area and parked on West Rogers Street approximately one block west of the **Subject Vehicle**. The letter carrier delivered mail to the South 11th Street block just north of West Rogers Street. While the Letter Carrier was delivering mail, at approximately 11:02 a.m., a suspected Hispanic male wearing a grey and black hooded sweatshirt with black and green shorts exited the front door 1032 West Rogers Street and appeared to get into the **Subject Vehicle**. This Hispanic male subject was short with a

9

heavy build and had a thick dark colored beard. The Wisconsin DOT records reflected Juan GARCIA-PAGAN had 1032 West Rogers Apartment 2 listed as his address on record. GARCIA-PAGAN was listed as 5'4'' tall and weighing 180 lbs. His driver's license photograph showed he had a thick dark beard. GARCIA-PAGAN matches the physical descriptors of the male who exited 1032 West Rogers Street.

24. At approximately 11:18 a.m., the letter carrier left the area without delivering mail to West Rogers Street and drove several blocks west out of sight of case agents. The **Subject Vehicle** left the area at the same time and followed the letter carrier's vehicle. At approximately 11:19 a.m., the **Subject Vehicle** drove back to the area and again parked in front of 1032 West Rogers Street. From case agents' training and experience, it appeared the occupant(s) of the **Subject Vehicle** were attempting to conduct counter surveillance on the letter carrier and any possible law enforcement officers in the area.

25. At approximately 11:26 a.m., the letter carrier arrived back to the area and again parked on West Rogers Street in front of the **Subject Vehicle**. At approximately 11:29 a.m., the letter carrier delivered SUBJECT PARCEL 29 by placing it in front of the front door of 1032 West Rogers Street. Shortly thereafter, the **Subject Vehicle's** passenger side rear door opened and the same male who earlier exited 1032 West Rogers Street got out of the **Subject Vehicle** and picked up SUBJECT PARCEL 29. This male subject put SUBJECT PARCEL 29 through the front passenger side window and the occupant(s) of the **Subject Vehicle** took possession of it. The **Subject Vehicle** immediately left the area

10

with SUBJECT PARCEL 29 and male subject went back into 1032 West Rogers Street.

26. On February 18, 2025, case agents received a copy of the Post Office surveillance video, which depicted CARTAGENA-MIRANDA shipping SUBJECT PARCEL 29.

27. Based on my training, experience, and familiarity with this investigation, the use of a fictious recipient names on SUBJECT PARCEL 29, CARTAGENA-MIRANDA shipping the parcel, the perceived countersurveillance of the delivery of the parcel, and the use of the **Subject Vehicle** to pick up the delivered parcel, lead me to suspect that SUBJECT PARCEL 29 contained controlled substances.

*Involvement of Jeronis MONTERO (VARGAS's Brother)
in Receipt of Subject Parcel 30*

28. On or about February 4, 2025, case agents reviewing USPS business records when the following parcel was found to be suspicious: USPS Priority Mail parcel 9505510336375034537808 ("SUBJECT PARCEL 30"). SUBJECT PARCEL 30 was a USPS large flat rate parcel weighing approximately 7 lbs. 1 oz. The shipping label for SUBJECT PARCEL 30 indicated it was from "Javier Pagan Calle Perla del Sur I 28 Reparto Flamingo Bayamon P.R. 00959". SUBJECT PARCEL 30 bore a handwritten label addressed to "Oscar Vargas 2475 South 5th St. Milwaukee W.I. 53207". SUBJECT PARCEL 30 was postmarked on February 3, 2025, in Sabana Seca, Puerto Rico 00952 at approximately 11:41 a.m. The postage paid was $26.30.

29. A search of Law Enforcement database indicated the recipient's name shown on the shipping label was fictitious. The sender's name could not be verified.

11

30. On February 5, 2025, case agents conducted surveillance on the delivery of SUBJECT PARCEL 30. Upon arrival to the area of 2475 South 5th Street, at approximately 12:05 p.m., case agents observed the **Subject Vehicle** parked approximately one house north of 2475 South 5th Street on the west side of the street. At approximately 12:32 p.m., the USPS letter carrier walked SUBJECT PARCEL 30 out of sight of case agents on the southside of the residence and scanned the parcel as "DELIVERED, GARAGE / OTHER DOOR / OTHER LOCATION AT ADDRESS." At approximately 12:47 p.m., Jeronis MONTERO, who case agents know to be VARGAS's brother, and a Hispanic male appearing to have the same physical height, weight, and skin complexion as Javier J. CARTAGENA-COLON emerged from the southside of 2475 South 5th Street where SUBJECT PARCEL 30 was delivered. Both subjects greeted the driver of a black Chevrolet Cobalt that just pulled up to the residence and parked in the middle of the street. After greeting the driver, both subjects and an unknown Hispanic male exited the front passenger seat of the Cobalt and all three got into the **Subject Vehicle**. The subject appearing to be CARTAGENA-COLON was the driver of the **Subject Vehicle**.

31. The **Subject Vehicle** then left the area and drove to the gas station at 2341 South Chase Avenue, Milwaukee, Wisconsin. At approximately 12:48 p.m., MONTERO was observed by Affiant exiting the front passenger seat of the **Subject Vehicle** and walking into the gas station. Affiant was able to identify MONTERO from previous surveillance operations. At approximately 12:51 p.m., MONTERO exited the gas station, entered the **Subject Vehicle**, and the subjects drove back to 2475 South 5th Street. The

12

driver of the **Subject Vehicle** (suspected to be CARTAGENA-COLON), and a short time later MONTERO, got out of the **Subject Vehicle** and walked through the front door of 2475 S. 5th Street. Neither were observed carrying items into the house. At approximately 1:19 p.m., MONTERO, the subject suspected to be CARTAGENA-COLON, and a small child exited the front door of 2475 South 5th Street. CARTAGENA-COLON was carrying a pink backpack that appeared to be too heavy for the small child to carry. The three subjects entered the **Subject Vehicle**, and CARTAGENA-COLON drove the **Subject Vehicle** from the area. Case agents then ended surveillance.

32. Based on the investigation to date, previous surveillance operations, and case agents training and experience, case agents believe that the contents of SUBJECT PARCEL 30 were placed in the backpack that CARTAGENA-COLON was carrying. Case agents know that traffickers will place illegal contraband in obscure items such as a child's backpack while transporting the illegal contraband. Individuals will do this in case they are stopped by law enforcement to deter officers from searching these items.

33. On February 18, 2025, case agents received a copy of the Post Office surveillance video, which reflected CARTAGENA-MIRANDA shipping SUBJECT PARCEL 30.

34. Based on my training, experience, and familiarity with this investigation, the use of a fictious recipient name on SUBJECT PARCEL 30, CARTAGENA-MIRANDA shipping the parcel, the presence of the **Subject Vehicle** at the delivery address, and the use of a children's backpack, lead me to suspect that SUBJECT PARCEL 30 contained

13

controlled substances.

35. Furthermore, phone toll analysis for the time period of January 17, 2025, to February 12, 2025, indicated CARTAGENA-MIRANDA's telephone number, 939-324-5219, was in frequent contact with telephone number 414-712-4799, which is the telephone number that MONTERO provided to law enforcement officers when interviewed for an unrelated incident. In February 2025, case agents issued a subpoena, served on AT&T, for telephone number 414-712-4799. The subscriber information for the telephone number listed to Julio VARGAS, MONTERO's deceased brother, with a billing address of 3908 N. 19th Place Unit 1, Milwaukee, Wisconsin.

*Subject Vehicle*

36. On January 31, 2025, at approximately 6:49 a.m., case agents observed the **Subject Vehicle** parked and unoccupied in the alley behind 719 West Madison Street. On February 4, 2025, case agents reviewed images of U.S. Mail addressed to 719 West Madison Street and 719 West Madison Street Upper between January 2, 2025 to January 31, 2025. "Javier Cartagena" and "April Puentes" were shown on mail for 719 West Madison Street. "April Puentes" was also shown on mail for 719 West Madison Street Upper.

37. On February 19, 2025, at approximately 1:00 p.m., Affiant went to the address of 719 West Madison Street and observed the **Subject Vehicle** parked in the alley behind the residence.

14

*Summary*

38. CARTAGENA-COLON currently operates **Subject Vehicle**. The court-authorized tracking device on the **Subject Vehicle** will assist case agents in conducting targeted physical surveillance, which will assist agents in identifying package distribution/receipt locations, other DTO-related locations, and co-conspirators and their roles.

39. Case agents believe the assistance of the court ordered location data associated with **Subject Vehicle** is necessary to further identify the locations and individuals associated with and the nature, scope, and structure of the DTO.

40. Based on information obtained through physical surveillance, confidential sources and information from other law enforcement agents, I believe that CARTAGENA-COLON is using **Subject Vehicle** to further his drug trafficking activities. Based upon my own observations, I know that **Subject Vehicle** is presently within the Eastern District of Wisconsin.

41. To effectively track the movement of **Subject Vehicle** and to decrease the chance of detection, I seek to continue to track **Subject Vehicle** while they are in the Eastern District of Wisconsin and elsewhere. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, removal, and maintenance of the tracking device during both daytime and nighttime hours. This authorization is essential due to the vehicle's locations, in that installation and removal of the tracking devices would be extremely

15

difficult to accomplish during daytime hours without being detected.

## AUTHORIZATION REQUEST

42. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of DEA, HIDTA, USPIS, and/or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device on the **Subject Vehicle** within the Eastern District of Wisconsin within 10 days of the issuance of the proposed warrant, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the **Subject Vehicle** after the use of the tracking device has ended; to install, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter 719 W. Madison Street, Milwaukee, Wisconsin; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Eastern District of Wisconsin.

43. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 180 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705.

16

Providing immediate notice to the owner or user of the **Subject Vehicle** would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.